## Kendrick v. Williams.

### (Decided March 10, 1914.)

### Appeal from Pike Circuit Court.

1. Judgment—Records—Nunc Pro Tunc Order—Entering at Subsequent Term.—The rule is well settled that the court cannot alter, correct, or amend its records at a subsequent term by the recollection of the judge, or the representation of others to him. There must be at least a minute, or a memorandum on the court record evidencing the order or judgment then rendered to justify the court, at a subsequent term, entering a nunc pro tunc order.

2. Bond—Proceeding Against Non-resident.—In an action under Section 414 of the Civil Code against a non-resident, the bond executed without objection two days before the judgment was sufficient in view of the fact that it appears the bond was tendered when the answer was tendered, and during the period the court had the question of the offer to file under advisement, the bond was misplaced.

STRATTON & STEPHENSON for appellant.

J. S. KLINE for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

This action arises from the attempt of appellee to enforce the collection of a $588.62 note which T. J. Kendrick and his son, John D. Kendrick, the appellant, executed to him on October 8th, 1909.

To understand the controversy it will be well to recite some of the transactions leading up to the note. It seems that the appellee, Williams, formerly owned

land in the State of Virginia, and this land he sold to T. J. Kendrick, some ten years before the note was executed, for approximately $3,000.00. He took in payment T. J. Kendrick's note for $1,300.00, and the balance was in some notes and accounts which Kendrick assigned to Williams and due from parties in and around Pike County, Kentucky, where this action was instituted. It seems that T. J. Kendrick guaranteed the payment of these assigned notes and accounts, and agreed that he would make good to Williams such of them as Williams failed to collect. Years later, that is, at the time the note in question was executed, T. J. Kendrick with his son, John D. Kendrick, the appellant, came to Pike County for the purpose of selling some timber, of the value of several thousand dollars, off the land in that county owned by John D. Kendrick and Ewing Kendrick, his infant brother. This sale was consummated, and it is conceded that T. J. Kendrick got a part of the proceeds or about $2,000.00 of it. The appellee, Williams, hearing of the negotiations, approached T. J. Kendrick, the father, for a settlement of the open account on the old land deal, that is, for a collection of the assigned claims which Williams had been unable to realize upon, and threatened to sue T. J. Kendrick while he was there and attach the land and timber which they were about to sell, claiming that T. J. Kendrick had an interest of some sort in the land. T. J. Kendrick wished to avoid the suit and proposed that they compare their accounts and if Williams would not sue, he (T. J. Kendrick) would execute a note to him for the balance due, and give his son, the appellant, John D. Kendrick, as security thereon. Williams consented to this and upon a settlement it was found that T. J. Kendrick owed him the sum of $588.62 and for which he executed the note and his son, the appellant, signed it as surety. The Kendricks then completed the sale of the timber and returned to Virginia.

On February 21st, 1911, the note remaining unpaid, with the exception of a credit of $170.00 paid about the time the suit was filed, Williams recovered a judgment against T. J. Kendrick and the appellant, John D. Kendrick. They were proceeded against as non-residents and an attachment levied upon the land of appellant in Pike County, the same land from which the timber had been sold. In due course, and upon constructive service, judgment was rendered and the land sold to satisfy it; appellee Williams becoming the purchaser.

This appeal arises from the effort of appellant, John D. Kendrick, to have the judgment and the note vacated as to him, and a retrial of the case upon tender of his answer showing a defense thereto. He relies upon section 414 of the Code which provides:

"A defendant against whom a judgment may be rendered upon constructive service of a summons, and who did not appear, may, at any time within five years after rendition of the judgment move to have the action retried; and, security for the cost being given, shall be admitted to make defense; and thereupon the action shall be retried as if there had been no judgment."

Williams objected to the filing of an answer and the re-opening of the case, but the court allowed it after taking the question for some days under advisement. The answer alleged that he was merely a surety and his father was the principal in the note, and that he was under 21 years of age at the time he signed it; that he received no benefit, nor any of the proceeds therefrom, and that same was not executed for necessaries. Williams first traversed this answer of record but later filed a written reply in which he alleged that he believed at the time the note was executed that appellant was over 21 yars of age, and that appellant fraudulently represented that he was over 21 years, and relying upon said representation he accepted the note, and abandoned his intention of suing T. J. Kendrick, the father, upon the original debt which the note was executed to secure. The reply also alleged that the appellant ratified the note after arriving at maturity by paying on it the $170.00 credit. Issue was joined on these averments, and the statute of frauds was pleaded as against the ratification because there had been no writing signed by appellant to that effect. During the next two years the parties took their proof and at the May, 1913, term the court adjudged that appellant was not entitled to any relief, and dismissed his answer, and from that judgment this appeal is taken.

We are of the opinion that the lower court erred. As above indicated, T. J. Kendrick was already indebted to appellee in the amount of the note, and it was to secure an old debt that the note was executed and the son, appellant, John D. Kendrick, became accommodation surety for his father. There is no question but what Williams believed the boy was of age at the time, but it is clear from the proof that he was a minor, and in the argument

and further defenses made, that fact is practically conceded. But it is urged that appellant fraudulently represented himself to be of age and relying upon that assurance Williams accepted him as surety on the note. There is, however, no satisfactory evidence that appellant ever made any such representation in connection with this note, or at the time it was executed. It is true Williams swears that the boy told him at the time that he was of age. He says it occurred in his store and that there were four other witnesses present. But this statement comes in answer to leading questions, and bears the ear-marks of hearsay testimony. Williams' own witnesses also show that appellant did not sign the note in Williams' store, but at another place, and none of these persons, whom he says heard appellant represent himself as of age at the time he signed the note, corroborate him. Neither is it shown that Williams was seriously prejudiced by any false or fraudulent representations as to appellant's age. He parted with nothing and appellant got no benefits from it.

Williams, however, insists that the $170.00 credit was paid or authorized to be paid by the appellant.

With the exception of the evidence of Ira Williams, a son of appellee, and which is subject to the same criticism as above stated, there is no evidence to support this contention. The proof conclusively shows that the payment was not made by appellant. It was paid by an uncle who lived in Pike County and who was indebted to appellant, but the payment was made under the direction of appellant's father, T. J. Kendrick. This is the only way in which appellant is connected with the credit. There is no pretense of anything in writing, or any memorandum signed by him after arriving at age, which tends to show a ratification of his acts during infancy, as required by the statute of frauds.

Appellee raises a more serious question when he shows that appellant when he tendered his answer failed to accompany it with security for cost as provided in section 414 of the Code, supra. Appellant insists that a bond was tendered at the time, but during the period the court had under advisement his offer to file it, the bond was misplaced, and when the court permitted the answer to be filed the matter of entering the bond of record was then overlooked. The record shows that appellee objected and excepted to the ruling of the court permitting the answer to be filed. Two years later, in fact, just two

days before the judgment appealed from was entered, the court made what is termed a *nunc pro tunc* order reciting the fact that a bond for cost was tendered with the answer, but by mistake it was not entered. Thereupon he accepted the recognizance of a surety, whose solvency is not questioned, "for all past and future cost that the defendant, John D. Kendrick, is chargeable with since the filing of said answer." Clearly this was erroneous as a *nunc pro tunc* order. The rule is too well settled that the court cannot alter, correct or amend its records at a subsequent term by the recollection of the judge or representation of others to him. There must be at least a minute or a memorandum on the court record evidencing the order or judgment then rendered to justify the court at a subsequent term entering a *nunc pro tunc* order. In this case there was no minute, memorandum or other evidence of record showing that a bond was tendered when the answer was filed. But this so-called *nunc pro tunc* order, entered two days before the judgment, was in fact a security or bond for cost and, except as to the time of its execution, it met all the requirements of the Code. There was no objection, or exception taken to it. It is well to note also that at no time during the two years while this action was pending did appellee move the court to dismiss for want of a bond, nor did he take any steps to require a bond. The lower court was of the opinion that the parties by proceeding with this action for two years without requiring a bond had in effect waived the error of the court in permitting the answer to be filed without a bond, if in fact no bond was tendered at the time. While the bond required in this character of a case is more than the ordinary bond required of a non-resident to enable him to prosecute an action, still we are of the opinion that under all the circumstances the bond executed without objection, two days before the judgment, was ample security to appellee, and met any requirement which he could have insisted upon at any time from its inception. There was, therefore, no error in accepting the bond for cost, but because of the errors above referred to as to the merits of the case, the same is reversed, with directions to vacate the judgment rendered on the note, and to set aside the order sustaining the attachment levied on the land, and set aside the sale had thereunder, and for such further proceedings to make this opinion effective.