# Morgan's Administrator v. Louisville & Nashville Railroad Company.

(Decided June 11, 1918.)

## Appeal from Lee Circuit Court.

1. Courts—Nunc Pro Tunc Order—When May Be Made.—When an order or direction of court has been omitted from the record by the inadvertence or the mistake of the clerk or judge, and there is record evidence showing that all the steps necessary to have the omitted order or direction entered were duly made and taken, and by reference to this record the court, without any other information or evidence, can know what judgment or order was intended to be entered, it may, from this record evidence, enter as of the date when it should have been entered what is called a nunc pro tunc order, or such, order as would have been entered except for the omission.

2. Courts—Nunc Pro Tunc Order—When Record Evidence Sufficient. —When a county judge accepted and approved an administrator's bond which was duly recorded in the bond book, a public record of his office, and by oversight he failed to enter an order on his order book showing the appointment and qualification of the administrator, he may thereafter enter, on his order book, a nunc pro tunc order as of the date when the order should and would have been entered except for the omission. This he may do upon the record evidence shown by the bond executed and approved.

3. Courts—Nunc Pro Tunc Order—Notice of Entry of.—If it is necessary that a person should have notice of the entry of an order or judgment if the order or judgment had been entered when it should have been, then it is necessary that he should have notice of the making of a nunc pro tunc order to take the place of the omitted order. If it is not necessary that a party should have notice of the entry of the original order when it should have been entered, neither will it be necessary to give such party notice of the entry or making of the nunc pro tunc order to take its place.

4. Courts—Nunc Pro Tunc Order—Sessions of County Court.—The county court can hold sessions every juridical day in the year and on any of these days enter an order appointing an administrator and a nunc pro tunc order may be entered showing the appointment of an administrator, although it may appear that on the date to which the nunc pro tunc order was post-dated no session of the court was held.

J. M. McDANIEL, ED. C. O'REAR and HAZELRIGG & HAZEL-RIGG for appellant.

SAMUEL M. WILSON, WALLACE & HARRISS, SAM HURST and BENJAMIN D. WARFIELD for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing:

This suit was brought by J. K. Hobbs, as administrator of Bert Morgan, against the Louisville & Nashville Railroad Company to recover damages for the death of Morgan, alleged to have been caused by the negligence of the company. On a trial of the case there was a verdict for $10,000.00, but the trial court refused to enter a judgment on this verdict, and on motion of counsel for the railroad company dismissed the petition without prejudice, upon the ground that J. K. Hobbs, in whose name the action was brought as administrator, had never been appointed administrator and consequently had no legal capacity to institute or maintain the action. From this judgment the administrator prosecutes this appeal.

It appears that although the petition recited that J. K. Hobbs was appointed administrator of the estate of Bert Morgan by proper orders of the Lee county court on February 13, 1915, he was not, in fact, appointed administrator on that date, as shown by any order or entry then made on the order book of the Lee county court. It also appears that counsel for the railroad company discovered, soon after the petition was filed, that there was no order of court appointing Hobbs administrator, and by appropriate pleas, as well as by answer, the railroad company denied that Hobbs had been duly or legally, or at all, appointed administrator; but it seems that counsel for the administrator did not discover that there had been no order appointing him until during the trial of the case, in September, 1916, at which time the administrator tendered an amended petition filing therewith a certified copy of an order of the Lee county court, made and entered on the order book of the court on September 15, 1916, showing the appointment of Hobbs as administrator of Morgan. The record is in a confused condition, and it does not clearly appear whether this amended petition was filed or not, but evidently it was treated by the court as having been filed because evidence in support of it was heard by the court, and this evidence shows the following state of facts: William Porter, deputy clerk of the Lee county court, testified that there was in his office a public record book the title of which was "The Administrators' Bond Book"; that in this book there was recorded, on February 13, 1915,

the following bond: "Whereas, J. K. Hobbs has been appointed by the Lee county court administrator of Bert Morgan, deceased, intestate, now we, J. K. Hobbs, administrator, J. A. Shackelford, surety, do hereby covenant to and with the Commonwealth of Kentucky, that the said J. K. Hobbs will well and truly administer the goods, chattels, credits and effects of the said intestate according to law, and will further make a just and true account of all his actings and doings therein; and will well and truly make a proper distribution of any surplus money, effects and rents which may come to his hands, or to any one for him, by color of his office, to the persons entitled thereto. If it shall hereafter appear that a last will and testament was made by deceased and the same be proved and recorded, we further covenant that the said J. K. Hobbs will, in such case, surrender his letters of administration and that he will account with and pay and deliver over to the executor or administhator with the will annexed, assets in his hands, unadministered. This 13 day of February, 1915. J. K. Hobbs, J. A. Shackelford." That attached to this bond there was the following paper: "To the Hon. Judge of the Lee county court: I, F. W. Morgan, father of Farris Morgan, deceased, aged 22 past, and Bert Morgan, deceased, age 17 past, both of whom died domiciled in Lee county Kentucky respectfully requests your honor to appoint J. K. Hobbs as administrator of the estate of each of said decedents and hereby waive my natural right to said appointment. F. W. Morgan (by his mark). Witness: H. S. McGuire. Approved by the court. This the 13th day of February, 1915. Green Kilburn, Judge."

He further testified that neither the order book nor the minute book of the Lee county court, on February 13, 1915, or before or since that date or until September 15, 1916, contained any order, minute, writing or direction, relating to the appointment of Hobbs as administrator of the estate of Morgan; and further that there was no order, minute or writing on either of said books showing that the Lee county court was in session, or was held, on February 13, 1915.

It appears, however, that on September 15, 1916, the following order was entered on the order book of the Lee county court: "It appearing to the satisfaction of the court that on the 13th day of February, 1915, J. K.

Hobbs was appointed as administrator of the estate of Bert Morgan, deceased, and that on said date said Hobbs, together with J. A. Shackelford, entered into and executed bond to and with the Commonwealth of Kentucky in the penal sum of $1,000.00 and said Hobbs took the oath as prescribed by law and it further appearing that by oversight the order of the court appointing said Hobbs as administrator aforesaid and accepting the bond aforesaid, was not placed on the order book of said county court, it is therefore ordered by the court that said order appointing said Hobbs administrator aforesaid and accepting said bond as such be made and placed on the order book of said court on this date and to be effective as of February 13th, 1915. Green Kilburn, Judge.'' And that on September 19th, the following order was entered on the order book of the court: ''Whereas, it appears by record and other evidence to the satisfaction of the court that on the 13th day of February, 1915, the following order was made, written out and signed by the judge of this court in substance and ordered to be entered: 'On motion of Frank Morgan, in writing, and also by his presence and oral motion in court, it is ordered by the court that J. K. Hobbs be and he is hereby appointed as administrator of the estate of Bert Morgan, deceased, and said J. K. Hobbs being present in open court accepted said appointment and thereupon entered into and acknowledged bond to and with the Commonwealth of Kentucky in the penal sum of one thousand dollars, together with J. A. Shackelford, his surety, which bond was accepted and approved by the court and thereupon said J. K. Hobbs took the oath prescribed by law.' ''

The railroad company, by its counsel, objected to the introduction of this evidence and after its admission moved the court to instruct the jury to find for it, but the objection was overruled, as well as the motion, and then the trial of the case progressed with the result that the jury found and returned the verdict before mentioned.

After this verdict was returned, the railroad company, by its counsel, filed its motion and grounds for a new trial, setting up several reasons, independent of those relating to the failure of the administrator to show his appointment except by *nunc pro tunc* order, and again

renewed its motion to abate the action and dismiss the petition upon the ground that Hobbs had no authority to institute or maintain the action in his capacity as administrator. The administrator also moved the court to enter judgment on the verdict; but the motion of the administrator for a judgment on the verdict was overruled, and the motion of the railroad company for a new trial on grounds other than those relating to the appointment of Hobbs as administrator, was also overruled, and thereupon the court sustained the plea in abatement and dismissed the action without prejudice.

The order of the court, in disposing of these motions and pleas, is as follows: "The court is of opinion and finds as a fact from the pleadings, exhibits and proof, that the plaintiff, J. K. Hobbs, was never duly or legally or at all appointed or qualified as administrator of the estate of Bert Morgan, deceased, and that no order appointing or qualifying him as such administrator was ever made or entered by the Lee county court, and that the plaintiff, J. K. Hobbs, had no legal capacity to institute or maintain this action, and it is therefore ordered, determined and adjudged that the verdict returned by the jury be and the same is set aside and that the defendants' plea in abatement be and the same is sustained, and the plaintiff's action be and it is dismissed without prejudice and that the defendants, Louisville & Nashville Railroad Company and Lexington & Eastern Railway Company, recover of plaintiff their costs herein expended for which they may have execution to all of which rulings of the court the plaintiff objects and excepts and prays an appeal to the Court of Appeals which is granted. And the court being advised as to the defendant's motion and grounds for a new trial and supplemental motion and grounds for a new trial herein overrules the same on the merits of the case to which ruling of the court the defendant objects and excepts and prays an appeal to the Court of Appeals which is granted. And thereupon came the plaintiff and renewed his motion to enter a judgment on the verdict heretofore returned by the jury herein and the court being advised overrules said motion. and declines to enter a judgment on said verdict to which rulings of the court the plaintiff objects and excepts and prays an appeal to the Court of Appeals which is granted."

On this appeal it is the contention of the appellant, administrator, that the court committed error in refusing to enter a judgment in conformity to the verdict, and in dismissing the action without prejudice, while it is contended on behalf of the railroad company that the rulings of the court in these respects were free from error.

It is apparent that unless Hobbs was appointed administrator of Morgan, he had no authority to institute or maintain the action, and, therefore, it should have been dismissed without prejudice, and this being so, the first question to be determined is, could the failure of the order book of the Lee county court to show the appointment of Hobbs as administrtor on February 13, 1915, be supplied by the *nunc pro tunc* order made on September 15, 1916?

As we have seen, it appears that on February 13, 1915, Hobbs executed his bond as administrator of Morgan, which bond was on that day entered in proper form and manner in the "Administrators' Bond Book," a public record book on file in the clerk's office of the Lee county court, and that there was attached to the bond the paper signed by the father of Morgan addressed to the county judge of Lee county, requesting him to appoint Hobbs as administrator, and that endorsed on this paper, attached to and made a part of the bond, was the approval of the court attested by the signature of the judge. We may, therefore, say that the bond as recited on this paper was "approved by the court."

In section 3838 of the Kentucky Statutes it is provided that the bond of an administrator "shall be subscribed by the principal and sureties, approved by the court, attested by the clerk of the court, and carefully kept by the latter in his office in a book to be provided for that purpose." It should further be noted that this bond, in its face, recited that "whereas, J. K. Hobbs has been appointed by the Lee county court administrator of Bert Morgan, deceased, intestate, now, we, J. K. Hobbs, administrator, and J. A. Shackelford, surety, do hereby covenant. . . ."

So that there was of record, in the proper record book of the Lee county court, a bond reciting that Hobbs had been appointed administrator, which bond duly executed and approved by the court, fulfilled all the requirements of the statute.

The law as laid down by this court in a number of cases in respect to the entry of *nunc pro tunc* orders is that such an order can not be made from the recollection of the court, or unless there is something shown by the records of the court that will enable the court, or the judge thereof, to supply the missing order by a *nunc pro tunc* order. Conn v. Doyle, 2 Bibb 248; Lynch v. Reynolds, 6 Bush 547; Vandever v. Griffith, 2 Met. 425; Montgomery v. Viers, 130 Ky. 694; Kendrick v. Williams, 157 Ky. 767.

In Ralls v. Sharp, 140 Ky. 744, the practice in relation to *nunc pro tunc* orders was thus stated: "The general rule is, although there are exceptions to it, that when an order or direction of court had been omitted from the record by the inadvertence or mistake of the clerk or judge, and there is record evidence showing that all the steps necessary to have the omitted order or direction entered were duly made and taken, and by a reference to this record the court without any other information or evidence can know what judgment or order was intended to be entered, it may from this record evidence enter as of the date when it should have been entered what is called a *nunc pro tunc* order or such order as would have been entered except for the omission. In other words, the court may do that which, except for inadvertence or mistake, would have been done. In making such entry the court is only correcting its own omission or mistake, or the omission or mistake of its clerk. It is not the making of a new order or direction, but the new entry of an old order or direction. It is merely placing the parties to the record in the condition the court intended they should be."

Applying the rule of law as stated to the undisputed facts of this case, it is at once apparent that in entering the *nunc pro tunc* order showing the appointment of Hobbs as administrator the judge of the Lee county court was not depending on his memory, or the recollection of any other person, but upon the Administrators' Bond Book, a public record in the clerk's offce of the court of which he was judge, which showed that on February 13, 1915, Hobbs had been appointed administrator of Morgan. With this record before him, the judge could not have any doubt in his own mind, nor could any one else have any doubt that in fact and in truth Hobbs had

been appointed administrator on February 13, 1915. Indeed, it would be difficult to find a state of facts that presented more convincing record evidence that the court had taken action in respect to a certain matter than the evidence afforded by this public record book, and if the entries on this book did not authorize the making of the *nunc pro tunc* order there could scarcely be found any record evidence that would authorize the making of such an order.

The record evidence upon which this *nunc pro tunc* order was made was equally if not more convincing than the record evidence upon which the *nunc pro tunc* order was made as set forth in the case of Ralls v. Sharp, *supra,* or the record evidence upon which the *nunc pro tunc* order described in Chester v. Graves, 159 Ky. 244, was made, or the record evidence upon which the *nunc pro tunc* order was made in Rogers v. Biggstaff's Exr., 176 Ky. 413. Nor is the practice that was approved in these cases in conflict with the rule laid down in Boyd County v. Ross, 95 Ky. 167, when the opinion in that case is carefully considered. In that case it appears that Kibbee, sheriff of Boyd county, executed, with his sureties, a bond, conditioned, according to law, for the collection of the county levy of Boyd county. It appears, however, that this bond was not, at the time of its execution, approved or accepted by the court, but several months thereafter the judge of the county court entered a *nunc pro tunc* order on his order book bearing the same date as the execution of the bond which recited that Kibbee and his sureties had executed the sheriff's bond which was "approved and accepted" by the court. In holding that the county court had no authority to make the *nunc pro tunc* order reciting that the bond had been "accepted and approved;" the court noted the fact that it was essential to the validity and force of the bond that it be not only signed and delivered by the sureties, but accepted and approved by the court, and said: "It thus became apparent that execution of the bond, though filed and kept by the clerk, affords no evidence of the other essential and independent fact that the sureties were approved and the bond was accepted by the court. So that as there was not at the time entered of record an order of court approving and accepting the bond, appellees (sureties) can be made liable for default of the sheriff only, if at

all, in virtue of the order of September 23, 1889.'' And further said: ''The statute in force when the alleged bond was executed required each county judge to ascertain and determine the solvency and sufficiency of county levy bonds, and, in case of approval and acceptance, to make and cause an order showing the fact to be entered of record. It was, besides, his duty to examine the order book and see the order was duly entered. But, as result of negligence of the county judge in failing to have the order accepting the bond entered of record, if it ever was indeed accepted, there was no way to obtain remedy for default of Sheriff Kibbee against his sureties, without such an order as was attempted to be made September 23, 1889. So that the county judge had a personal interest in making that order whereby to render sureties of Kibbee, though not so before, then liable, and release himself from possible liability. In our opinion the rule should be strictly applied in this case.''

It will be, at once, observed that the facts of that case were, as the court said, so exceptional as to call for a strict compliance with the rule that a *nunc pro tunc* order can not be entered in the absence of record evidence upon which to rest it, and it is further apparent from the citation taken from the opinion that the court was largely influenced in ruling that the county judge was not warranted in making the *nunc pro tunc* order, by the fact that the judge, making the order, had a personal interest in holding the sureties bound in order that he might thereby escape liability for his own negligence in failing to make, in proper time and manner, the order accepting and approving the bond.

But there are in this case no exceptional, or any circumstances, that would call for the same strict application of the rule applied in the Boyd county case. On the contrary, all the circumstances surrounding the transaction would influence us, if necessary, to give to the rule upon which *nunc pro tunc* orders may be made a liberal application in order that the ends of justice might not be defeated by the failure of the county judge to perform what may be described as the mere ministerial duty of entering an order on his record book that would be merely a duplicate of what he had already done in his official capacity in accepting and approving the bond made by Hobbs as administrator as shown by the bond and minute made on the paper attached thereto.

Nor was it necessary that the railroad company should have any notice that this *nunc pro tunc* order was about to be made. The railroad company had no concern in who should be appointed administrator of Morgan; the only person whose wishes it was necessary to consult had requested the appointment of Hobbs. If it was sought to enter a *nunc pro tunc* judgment in a case as was attempted in Montgomery v. Viers, *supra,* it is manifest that the person against whom the *nunc pro tunc* judgment was about to be entered should have notice of what was going to be done, because his rights would be immediately and directly affected by the entry of the *nunc pro tunc* judgment against him, and so it would be proper to give notice in any state of case in which the entry of the *nunc pro tunc* order might affect the rights of strangers to the record.

In other words, if it is necessary that a person should have notice of the entry of an order or judgment if the order or judgment had been entered when it should have been, then it is necessary that he should have notice of the making of a *nunc pro tunc* order to take the place of the omitted order. But if it is not necessary that a party should have notice of the entry or making of the original order when it should have been entered or made, neither will it be necessary to give such party notice of the entry or making of the *nunc pro tunc* order to take its place.

It is further insisted by counsel for the railroad company that it does not appear that the Lee county court was in session on February 13, 1915, and, therefore, the *nunc pro tunc* order actually made on September 15, 1916, could not be put on the order book of the court on a day when the court was not in session. The county court can hold session every juridical day in the year, and on any of these days enter an order appointing an administrator. On February 13, 1915, the court, except for oversight or inadvertence, could and would have made the order showing the appointment and qualification of Hobbs as administrator, and this being so, we find no objection to post-dating the *nunc pro tunc* order to correspond with the date when it should have been made.

Passing now to other matters, we find it insisted by counsel for the administrator that the lower court should be directed, on a return of the case, to enter a judgment

on the verdict in view of the fact that the lower court overruled the motion and grounds for a new trial.

In the present condition of the record, it would be manifestly unjust to comply with this request because none of the evidence heard on the trial except that relating to the *nunc pro tunc* order has been brought to this court, and, therefore, we are unable to say whether the trial court properly overruled the motion and grounds for a new trial. The railroad company, after the court had declined to enter a judgment on the verdict, and especially after it had sustained its motion to dismiss the petition, had no reason to prosecute an appeal to this court or bring any part of the record here. Indeed, it could not have prosecuted an appeal because there was no judgment against it to appeal from. The only matter before us on this appeal is the question involving the ruling of the court in respect to the *nunc pro tunc* order.

Nor is it quite clear from the record whether the trial court was influenced to overrule the motion and grounds for a new trial because it had disposed of the case by dismissing the petition, or because after hearing and considering the motion and grounds for a new trial it believed they should be overruled. Therefore, on the return of the case, the trial court will set aside so much of the order or judgment as dismissed the petition, and will enter a judgment on the verdict and then either overrule or sustain the motion and grounds for a new trial as seems to it right and proper. After the motion and grounds for a new trial has been disposed of by a new order, then the party complaining of the ruling of the court, on the motion and grounds for a new trial, will follow the usual practice in such cases in order to bring the case to this court if it is desired to prosecute an appeal.

Wherefore, the judgment is reversed with directions to proceed in conformity with this opinion.