## Morgan's Administrator v. Louisville & Nashville Railroad Company, et al.

(Decided May 2, 1924.)

### Appeal from Lee Circuit Court.

1. Appeal and Error—Presumed Instructions Given on Court's Own Motion.—There being nothing in the record showing on whose motion certain instructions were given, it will be presumed that they were given upon the court's own motion.

2. Railroads—Care Required in Managing Engine Equipped with Spark Arrester.—Even if a railroad had installed the most approved of spark arresters known to science and in practical use, it nevertheless was liable for damage by fire caused by spark from engine, if the engine and train were handled and managed by employes in such a negligent manner as that sparks escaped therefrom.

3. Railroads—Evidence of Other Fires Admissible.—In action for damages caused by sparks from railroad engine, court erred in limiting evidence of other fires set by sparks from defendant's engines for six weeks before the fire and six weeks thereafter, as greater latitude should be allowed in damp, rainy, snowy weather than in dry weather.

JOHN D. CARROLL, E. C. O'REAR and J. M. McDANIEL for appellant.

B. D. WARFIELD, SAMUEL M. WILSON, A. M. WARREN, ROSE & STAMPER and HUNT, NORTHCUTT & BUSH for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

Appellant sought to recover of the appellees $50,-000.00 for the death of his intestate, and, having lost his case in the court below, has appealed to this court. The intestate, Farris Morgan, lost his life in a fire which de-

stroyed his father's house, which was situated between Fincastle and Torrent in Lee county. This fire occurred about one o'clock in the morning. The house destroyed was a one-story house with a loft above it. The main part was built of logs and had two box shed rooms attached. Mr. and Mrs. Morgan and seven children who were sleeping down stairs escaped in their night clothes. Three of his sons, Waldon Morgan, Bert Morgan and Farris Morgan, were sleeping in the loft of the house. The upper part of this house contained no doors or windows, and was reached by a stairway from the family room, and there was no other opening into this loft except a trap-door. This loft was divided by a log partition into two compartments. These young men were sleeping in the compartment above the family room. The other compartment of this loft was used as a sort of a storeroom, in which was stored clothing not then being used by the family, and fruits and canned goods. Some of the logs in the partition between these two compartments had been sawed out, so that it was possible for one to pass from the compartment above the family room, in which these young men were sleeping, into the other compartment which was used as a storeroom. At the time of the fire Waldon Morgan did pass from the first named compartment into this storeroom, and, by knocking off some boards, got out of this storeroom on to the roof and escaped. The other two young men, Bert Morgan and Farris Morgan, were burned to death in their beds, their bones and ashes being found on the springs the next day. The father, F. W. Morgan, waived his right to qualify as administrator of his sons, and James K. Hobbs was appointed. He instituted two suits to recover for the death of these young men.
that point.

The suit to recover for the death of Bert Morgan came to this court twice, and for the assistance of those who may read this opinion, reference is now had to 181 Ky. 76, 203 S. W. 1065, and 188 Ky. 291, 221 S. W. 539.

It was the contention of the appellant that the house was set on fire by a spark or sparks negligently emitted from one of two locomotives drawing appellees' freight train No. 26 on an up grade between Fincastle and Torrent, past the home of F. W. Morgan, father of intestate, which home was situated about 55 feet from the center of the railroad track.

Appellees contended that this house was not fired by a spark or sparks from an engine, but by a spark from a

fire which had been left burning in the fireplace of the Morgan home when the family retired for the night, and which spark appellees contended escaped from the chimney through a crack therein where the mud had fallen out, and thereby set fire to the house; or, that if it was fired by a spark from one of their locomotives, appellees were not liable therefor, because their locomotives were equipped with spark arresters, which were of an approved pattern, in perfect condition, and the engines were not negligently operated and did not throw large sparks.

Nine of the jury found a verdict for the defendants, which appellant seeks to reverse. Several grounds are assigned as reasons for a new trial, but the principal complaint seems to be of the instructions. Instructions 1, 2, and 3 were offered by appellant. Appellees offered an instruction, a portion of which was given by the court, and which portion is instruction 4. There is nothing in the record showing on whose motion instructions 5, 6, 7 and 8 were given. In this state of the record the presumption will be that they were given upon the court's own motion. The record shows that they were objected to by the appellant and exception reserved at the time.

Instruction No. 7 was erroneous, and this case must be reversed because of it. If, upon a new trial of this case, the evidence is substantially the same as upon this trial, the court will instruct the jury as follows:

a. The court instructs the jury that it was the duty of the defendants, L. & N. R. R. Co. and Lexington & Eastern Railway Company, to equip the engines of the train mentioned in the proof, with the most effectual screens and spark arresters in practical use, and to keep the same in good order and properly adjusted and to operate them carefully so as to prevent as far as possible sparks, cinders and coals of fire from escaping therefrom, and if the jury believe from the evidence that the defendants then failed so to do and that by reason of such failure, if any, the house of the father of plaintiff's intestate was set on fire by sparks or cinders that escaped from said engines, or either of them, and not otherwise, and that the fire caused said house to be burned and burned the plaintiff's intestate, Farris Morgan, to death, you will find for plaintiff, and unless you so believe, you will find for the defendant.

b. Although the jury may believe from the evidence that the plaintiff's intestate, Farris Morgan, lost his life in a fire occurring on February 10, 1915, and that

the fire was caused by sparks of fire or burning cinders emitted from an engine or engines belonging to or then used by one or both of the defendants, yet if the jury further believe from the evidence that the engine emitting such sparks or cinders, if any, was equipped with one of the best and most effectual screens or spark arresters in practical use, that said screen or spark arrester was in good order and properly adjusted, that the engine was at the time being operated carefully on the part of the defendant's servants in charge of the train and was not emitting sparks of fire or burning cinders of unusual size or in unusual quantities, then, and in that event, the jury will find for the defendants.

c. The court instructs the jury that if from the evidence they are unable to determine the origin of said fire; or if from the evidence they are unable to determine whether said fire was caused by sparks from defendants' engine, or from some other cause; or if they believe from the evidence that said fire originated from fire inside the house, they will find for the defendants.

d. If the jury believe from the evidence that the plaintiff's intestate, Farris Morgan, lost his life in a fire occurring on February 10, 1915, and that such fire originated from and was caused by sparks of fire or burning cinders emitted by one of defendants' engines, yet if the jury further believe that such loss of life was due to or caused by negligence on the part of Farris Morgan, the plaintiff's intestate, in not exercising ordinary and reasonable care for his own safety on the occasion of said fire and that but for such negligence on the part of said Farris Morgan, his death would not have occurred, the jury will find for the defendants.

e. "Carefully," as used in these instructions, means with ordinary care; and ordinary care is such care as an ordinarily prudent person will exercise under like or similar circumstances.

f. If you find for the plaintiff you will award plaintiff such a sum in damages as will reasonably compensate the estate of said Farris Morgan for the destruction of his power to earn money, not to exceed, however, the sum of $50,000.00, the amount claimed in the petition. If you find for the defendant, you will merely say so in your verdict, and nothing more.

g. Nine of the jury may find a verdict; but if less than the whole of the jury agree on a verdict, then those so agreeing must sign it.

Appellant complains of the action of the lower court in limiting the evidence of other fires set by sparks from the engines of appellees to six weeks before the fire and six weeks thereafter. These are very narow confines, and upon another trial the court will allow greater latitude. In the case of C. & O. Ry. Co. v. Meek, 169 Ky. 775, this court discussed the theory upon which such evidence is admissible and the range it should take. Greater latitude should be allowed in damp, rainy, snowy weather than in dry weather, for there are times when no amount of sparks can start fires, and other times when fires can be easily started. For the reasons indicated, the judgment is reversed, and remanded with directions to award plaintiff a new trial, and for further proceedings consistent with this opinion.