### Decker, et al. v. Tyree, et al.

(Decided June 6, 1924.)

## Appeal from Livingston Circuit Court.

1. Ferries—County Court Having First Taken Jurisdiction of Granting of Ferry Franchise Continued to have it.—A county court, having first taken jurisdiction of the question of granting a ferry franchise, continued to have it exclusive of any other county court contiguous to the stream until it in some legal manner relinquished its jursidiction.

2. Judgment—Phraseology to be Interpreted as Any Other Writing. —The phraseology of judgments is to be interpreted as any other writing, and, if the terms employed are such as to clearly convey the intentoin of the court rendering it, it will be upheld, although the most apt terms were not employed.

3. Ferries—Judgment Renewing Ferry Privilege Held Valid.—An order of the county court was not void because it purported to "extend" and "renew" a ferry franchise theretofore granted, when the court was vested by the statute with jurisdiction only to grant a franchise and not to extend or renew a prior one; the intent of the court being clearly to grant a franchise for a new term, especially as against collateral attack.

4. Ferries—Application for Ferry Franchise a Collateral Attack Upon Order of Another County Court.—An application in one county court for a ferry franchise at a certain point was a collateral attack on judgment and proceedings of another county court granting a franchise to other persons; it being claimed that the first judgment was void as ground for granting of the second application.

5. Judgment—What Constitutes "Collateral Attack."—When the attacked judgment is relied on as evidence of a right, and its competency is denied because of its invalidity, the attack is a collateral one.

6. Ferries—Conclusive Effect of Judgment of County Court Granting Ferry Franchise.—The jurisdiction to grant ferry privileges, under Ky. Stats., sections 1800, 1802, 1804, 1813, is exclusively

conferred upon the various county courts in the Commonwealth, and for that purpose it is a court of original as well as exclusive jurisdiction, and the same presumption in favor of its jurisdiction, in collateral attacks on its judgments in such cases, will be applied as is done to judgments of superior courts of general jurisdiction.

7. Courts—County Court a Court of Record, and Judgments Immune from Collateral Attack.—The county court is a court of record, and, when it is given exclusive jurisdiction of a subject matter, its judgments as entered on its records are entitled to the same immunity from collateral attack as are judgments of courts of superior and general jurisdiction.

8. Ferries—Failure to Execute Bond and Fix Tolls at Time of Granting Franchise Did Not Render Judgment Void.—Failure to execute bond at the time of granting ferry franchise, and failure of the court to make an order concerning the rate of tolls, did not render the judgment void; such omissions being errors only that did not affect the jurisdiction of the court.

9. Ferries—Judgment Granting Franchise Void for Uncertainty.—A judgment granting a ferry franchise was void for uncertainty, where it did not designate the stream or any road leading to the banks of that stream.

10. Judgment—Not Amenable by Parol Proof, but Entire Record May be Looked to to Supply Omissions.—Uncertainty in a judgment may not be supplied by parol proof, since the rule is that judgments may not be amended in any such manner, but the entire record may be looked to for the purpose of supplying omissions made in the judgment itself.

11. Judgment—Orders or Papers that May be Consulted to Supply Omission in Judgment.—Only orders or papers in cause that may be consulted to supply omissions in final judgment to render it sufficiently certain are such parts of record as were in existence and formed part of it at time judgment was rendered.

12. Evidence—Presumed that County Court, in exercising Jurisdiction of Application for Ferry Franchise, Acquired Right to do so by Observing Requirements.—It will be presumed that county court, in exercising jurisdiction of application for ferry franchise, had properly acquired right to do so, by observing all statutory and jurisdictional requirements.

CHAS. FERGUSON and H. F. GREEN for appellants.

MOCQUOT, BERRY & REED and A. M. NICHOLS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On July 3, 1922, appellants, Anna Irene Decker and T. M. Vickers, made application to the Livingston county court for a grant of a ferry franchise and privilege across the Tennesee river at the point where the Ohio

river federal highway crosses it and which was a short distance below the mouth of Clarks river on the McCracken county side and to a point opposite it on the Livingston county side of the river, and theretofore known as Clarks ferry. The application was preceded by the due posting of notices, as required by section 1804 of our present statutes, and it was made under the provisions of section 1800 of the statutes. The motion was continued and before it was heard the appellees, Effie Tyree and others, heirs and successors of Mollie Norden, *nee* Mollie Hildreth, deceased, filed their intervening petition and asked that they be made parties because of their interest in the subject matter. In their intervening pleading they alleged that on October 9, 1883, Mollie Hildreth, through whom they claimed title, obtained from the McCracken county court the right and franchise to operate a ferry at the same place and across the same river for the period of twenty years, which under the provisions of section 1802 of the statutes is the maximum period for which such a grant may be made, and that in 1903 Mollie Hildreth, who in the meantime had married a Mr. Norden, made another application to the same court for the same ferry privilege and obtained the right to operate it for another twenty years, which would expire in October, 1923. There was filed with the intervening petition only one exhibit, forming any part of either of those records, upon which the petitioners relied to establish the second granting of the franchise, made in 1903, and it was a certified copy of the order of the McCracken county court purporting to grant the privilege and was and is in these words, omitting caption: "Upon motion of Mollie Norden, formerly Mollie Hildreth, and the court being advised it is ordered that the ferry privilege granted the said Mollie Hildreth by this court on the 9th day of October, 1883, be and the same is hereby extended and renewed in the name of Mollie Norden for the period of twenty years." Appellants answered the intervening petition and denied the granting of the franchise or privilege to Mrs. Hildreth in 1883, and also denied that there was any such grant to her, under the name of Mollie Norden or any other name, in 1903, and denied that there was any such record or records. In a second paragraph, responding to the above order of 1903, they affirmatively alleged that it did not grant any franchise or privilege and, furthermore, that there were no

notices posted, as required by the statute (section 1804) prior to the entry of that order; nor was there any bond given by Mrs. Norden (*nee* Hildreth) either in 1883 or 1903, and they also averred that at the time of each of said alleged grantings the court did not fix by an order or otherwise any rate of tolls, as is prescribed in section 1813 of the statutes, and that no bond of any kind was executed until after the death of Mrs. Norden and not until 1919 when the intervenors executed a bond, and that about that time the McCracken county court fixed a rate of tolls for the first time during either of the alleged grants. They, therefore, alleged that the purported order (same as copied above) was effectual for no purpose and conferred no right, franchise or privilege on the intervenors as successors of Mrs. Norden. Appropriate pleadings made the issues and the motion of appellants was dismissed by the county court and they prosecuted an appeal to the Livingston circuit court, and upon trial in that court the intervenors introduced two witnesses by whom they proved that a written notice was posted at the courthouse door in McCracken county some time prior to the entry of the above copied order made in 1903; and also that the same notice was posted in the vicinity of the ferry, but there was no proof as to the contents of those notices. They attempted to prove by the same witnesses, which testimony was *aliunde* the record, that a bond was executed at the time of the entry of that order, but that evidence, if regarded as competent (which is doubtful but which we do not now determine) failed to establish that fact and there was no effort, even by that character of proof, to show by whom the bond was executed or its contents. Neither was there any proof to establish the facts that appellees or their predecessor in title, Mrs. Norden, ever operated the ferry, although that fact was denied in the reply to the intervening petition. Upon submission there was a judgment rendered "that the application of the said Mrs. Anna Irene Decker and T. M. Vickers be and the same is disallowed and their application is dismissed absolutely," to which appellants excepted and prosecuted this appeal to this court.

Upon request the learned judge of the circuit court separated his findings of law and fact and found, among other facts, "that a ferry franchise or privilege across the river at the point in controversy was granted to Mrs. Mollie Norden in October, 1903, by the McCracken county,

Kentucky court," and that Mrs. Norden continued to operate the ferry under the assumed franchise till her death in 1910 and that appellees succeeded to her rights, and after that time executed the bond above referred to which had not been done by them or their predecessor in title prior thereto. He further found that Mrs. Norden and appellees as her successors had operated under their management and control the ferry at the same place continuously since 1883, and that the twenty year period from 1903 lacked more than a year of being expired at the time appellants made their application to the Livingston county court. From those facts the court determined the law to be that the McCracken county court having first taken jurisdiction of the *rem* (the granting of the ferry) continued to have it exclusive of any other county court contiguous to the stream until it, in some legal manner, relinquished its jurisdiction, which it had not done in this case. The court also held that if there were any errors in the proceedings in the McCracken county court they should be corrected therein and not in the Livingston county court, with which we are in hearty accord, for to hold otherwise would produce entangling conflicts between the various county courts bordering upon streams where ferries are required, and would result in much confusion. Stahl v. Brown, 84 Ky. 325. In order, however, for that principle of law to apply, necessarily, it should appear that the county court first assuming jurisdiction did in fact procure it, which brings us to the main and decisive question in the case.

It is insisted by counsel for appellants (a), that the facts concerning the McCracken county record as disclosed in this record are insufficient to show that the county court of the county had jurisdiction to grant the ferry privilege, either in 1883 or 1903, when it assumed to grant it to the predecessor of appellees; and that being true, they argue that the Livingston county court had jurisdiction and the court erred in dismissing their application. If, however, they should be mistaken in insistence (a), then they claim (b), that the order above inserted, and which was made by the McCracken county court in 1903, was and is void because it does not in terms grant a franchise, but only purports to *extend* and *renew* one theretofore granted, when the court was vested by the statute with jurisdiction only to grant the franchise and not to extend or renew a prior one. We, however, are not impressed with the latter contention. True it is

that there is a technical difference between *renewing* or *extending* a privilege or a right already in existence and the original granting of such privilege or right; but the phraseology of the judgments is to be interpreted as any other writing, and if the terms employed are such as to clearly convey the intention of the court rendering it, it will be upheld although the most apt terms were not employed. The judgment, according to our view, is amply sufficient to show that the purpose and intent of the court in rendering it was to grant to the applicant the right and privilege to operate some (though indefinite) ferry for another twenty years after the expiration of the first grant, which we are convinced is sufficient to uphold the judgment notwithstanding its inaccurate and inapt terms, if it was otherwise valid, and especially so in this collateral attack, which brings us to a consideration of insistence (a), *supra.*

That this proceeding is a collateral attack on the judgment and proceedings of the McCracken county court is undoubtedly true, and indeed is admitted. Whatever may be the nicety of distinctions between a direct and a collateral attack, it is everywhere conceded that when the attacked judgment is relied on as evidence of a right, and its competency is denied because of its invalidity, the attack is a collateral one. Such is the situation here, and being so we are not called upon to discuss the clouded and much confused condition of the law differentiating a collateral from a direct attack of judgments. Treating the question, therefore, as a collateral attack on the McCracken county judgment, it is contended by appellants' counsel that a county court is an inferior one of limited jurisdiction, and that the conclusive presumptions in favor of a judgment of a court of superior and general jurisdiction in a collateral attack do not apply to the judgment and proceedings of the McCracken county court, and that contention is true if the premises from which it is drawn were true, *i. e.,* that the McCracken county court in exercising its jurisdiction to grant ferry privileges is an inferior court with only special, or what is sometimes called limited jurisdiction. Such, however, is not true, since the jurisdiction to grant ferry privileges under the sections of the statute, *supra,* is exclusively conferred upon the various county courts in the Commonwealth, and for that purpose it is a court of original as well as exclusive jurisdiction, and the same presumptions in favor of its jurisdic-

tion, in collateral attacks of its judgments in such cases, will be applied as is done to judgments of superior courts of general jurisdiction. Jacobs v. L. & N. R. R. Co., 10 Bush 263; Porter v. Eastern Ky. Asylum, 121 Ky. 816, and Hatten v. Turman, 123 Ky. 844. That principle of the law relating to judgments is thoroughly established by the text writers with citation of which we need not encumber this opinion.

The county court is a court of record and when it is given exclusive jurisdiction of a subject matter, its judgments, as entered on its record, are entitled to the same immunity from collateral attack as are judgments of courts of superior and general jurisdiction. Indeed, the opinion in the Hatten case *supra* dealt exclusively with a judgment of a county court granting a ferry privilege and which was collaterally attacked upon the ground that it did not recite the posting of notices required by the statute, and it also failed to specify the period of the franchise. The court held that in such an attack the presumption would be indulged in favor of the judgment that the statute was complied with, and that the jurisdictional notice was given, and the failure to limit the franchise to twenty years was not fatal to it. In other words, the court in effect held, and which is in accordance with the general rule on the subject, that the *silence* of the record attacked upon the existence of the jurisdictional facts would not be fatal to the judgment, since it would be presumed that they existed, notwithstanding the silence of the record upon that point. Van Fleet on Collateral Attack, sections 830 and 831, and Freeman on Judgments, vol. 1, section 132. Whether that presumption is a conclusive or rebuttable one it is not necessary for the purposes of this opinion to determine, although the text authorities referred to say that the presumption is conclusive. If, therefore, the McCracken county judgment was otherwise valid, the burden would be upon appellants who collaterally attacked it to show the absence of jurisdictional facts, if it should be held that the presumption was a rebuttable one, but they would be prevented from introducing evidence on that point if the presumption is a conclusive one. They introduced no evidence in the case, and so far as the present contention is concerned they failed to support their defense of a want of jurisdiction in the McCracken county court.

Neither do we think that the failure of Mrs. Norden to execute bond at the time of the granting of the fran-

chise, if any was granted to her, nor the failure of the court to make an order concerning the rate of tolls, rendered the judgment void, since it is our conclusion that those omissions were errors only and did not affect the jurisdiction of the court. In other words, we are of the opinion that neither of them is a jurisdictional requisite. On the effect of a failure to execute the bond see Van Fleet on Collateral Attack, section 292, and Sanders v. Craig, 1 A. K. Mar. 196, wherein it is pointed out that the failure to execute it does not render the judgment void, but only erroneous; and the same effect was given to a failure of the court to fix toll rates in the cases of Ackler v. Oldham, 1 A. K. Mar. 471, and Pentecost v. Miller, 7 T. B. Mon. 312. Those matters are things to be exacted and fixed by the court, and unless the statute prescribes that the judgment shall be void without complying therewith, no such effect will be given, since it is competent for the court at any time to require the one to be done and itself to do the other. The effect of the omissions, therefore, is unlike the omission to require a bond in the sale of infants' 'real estate under some sections of the code, for in those cases the statute expressly provides that a judgment without the required bond shall be void. We, therefore, conclude that the attacked judgment of 1903 of the McCracken county court, if otherwise valid, cannot be held void in this collateral attack upon any of the grounds so far discussed.

The next question to be considered is whether the above inserted final order, made by the McCracken county court in October, 1903, is on its face so indefinite as to be void for uncertainty and, if so, was there filed in this case during the trial below any paper, order or judgment forming a part of the McCracken county record at the time that judgment was entered to which the court may look in order to remove its indefiniteness and uncertainty if found to exist? It will be observed that the judgment nowhere designates the stream across which the ferry was created or the privilege granted; nor does it designate any road or highway leading to the banks of that stream and between which the ferry privilege was to be exercised. It, perhaps, would be true, though there is some authority to the contrary, that the reference in the 1903 order to the one of 1883 would serve to remove the uncertainty if the latter order supplied the defects, but it was not introduced at the hearing nor, we repeat, was

there introduced any paper in either of the two proceedings from which the location of the ferry, as well as the stream it was to cross, might be ascertained. For aught that appears from the only parts of the records of the two proceedings of the McCracken county court introduced and relied on in this case, as they were composed at the time, the ferry referred to in the 1903 order may have been across the Ohio river at some point bordering on McCracken county, or at some other point than the one involved in this case across the Tennessee river, or, perhaps, at some point across Clarks river. Suffice it to say that there is nothing to identify the ferry privilege therein referred to with the one sought to be established by appellants in this proceeding, and we are convinced that such uncertainty may not be supplied by parol proof, since the rule is that judgments may not be amended in any such manner, but the entire record as it then existed may be looked to for the purpose of supplying omissions from the judgment itself. If, therefore, we had in this case the entire original records, or if we had before us the judgment or order made in the McCracken county court in 1883 and either of them removed the uncertainties of the 1903 order, according to the weight of authority we would be authorized to consider them for the purpose of curing the uncertainty of the 1903 judgment. Not having such curatory documents, and being compelled to look to the judgment alone, we are convinced that it, on its face, is void for uncertainty. Mr. Freeman, in his work on Judgments, vol. 1, sections 50-52 inclusive, deals extensively with the subject as to the necessary certainty of judgments, and in section 50c he says: "This property which is the subject of a judgment of decree must also be described with sufficient certainty to leave its identity free from doubt; but the bill of complaint may be referred to in the judgment, for the purposes of description." And further along in the section it is said: "That a judgment may be aided by the pleadings and other parts of the record, and if the description obtainable from it and them would be sufficient if found in a conveyance to divest the title of the grantor, it will be sufficient to sustain sales made or possession taken under the judgment, *otherwise,* that the *judgment* and *all proceedings under it* must be treated as *void.*" (Our italics). In 23 Cyc. 1095-6, the text in dealing with "Defects in Entry or Contents of Judgment" as grounds for collateral attack, says that they will not be set aside as void for any in-

formality or incompleteness "provided its defects or omissions are not such as to render it absolutely unintelligible, and therefore void for uncertainty." A number of cases are cited in the note to the excerpt and wherein it is said that omissions in the entry of the judgment itself will not invalidate it on collateral attack if they "are ascertainable from the pleadings or other parts of the record," but if they are not so ascertainable the judgment will be held invalid on collateral attack. As above pointed out, we have no such records in this case to which we may look in order to ascertain the necessary certainty which the 1903 McCracken county judgment failed to record, or in any manner point out, and as the record stands it must necessarily be held void for uncertainty.

But it is insisted by appellees that the orders of the McCracken county court made in 1919 (by one of which they, as successors of Mrs. Norton to the title of the ferry privilege, were required to and did execute or renew their formerly executed bond as required by the statute, and by the other of which the court designated toll rates to be charged by the appellees) the ferry privileges across the same stream and at the same place involved in this case were particularly pointed out and designated; and that such designations found in those orders may be looked to in aid of the 1903 judgment for the purpose of supplying the omissions which render it void for uncertainty, under the rule above discussed. But we do not think that the position of counsel in so insisting is tenable. The rule that other orders or papers in the cause may be consulted, in order to supply omissions in the final judgment and to render it sufficiently certain to be executed without the aid of parol proof, is confined to such parts of the record as were in existence and formed a part of it at the time the indefinite judgment was rendered and do not include other documents, orders or papers which may be subsequently put into the record or later rendered in the cause after the defective judgment became final, unless, perhaps, the subsequent order was a valid *nunc pro tunc* one. It is not claimed that the 1919 orders were of that nature, and for the reason stated they may not be consulted for the purposes insisted upon.

But, notwithstanding that fact, the 1919 orders do show that the McCracken county court was at that time exercising jurisdiction over the same ferry involved in this case; and since, as we have seen, it was a court of

general jurisdiction as to the particular subject matter, it will be presumed under the rule, *supra*, that in so exercising jurisdiction at the time those orders were made it had properly acquired the right to do so by observing all of the statutory and jurisdictional requirements in such cases. Having so acquired jurisdiction (either actually or presumptively) it could not be ousted of it, as we have also seen, by another county court of equal and co-ordinate jurisdiction until the jurisdiction it acquired expired or was set aside in some legal way. We, therefore, conclude that the learned judge of the Livingston circuit court properly dismissed the proceedings upon the ground that it appeared that the McCracken county court had acquired, and at the time of the trial below was actually exercising jurisdiction over the same subject matter.

Wherefore, the judgment is affirmed.