## Louisville & Nashville Railroad Company v. Bays' Administratrix.

(Decided June 10, 1927.)

### Appeal from Harlan Circuit Court.

1. Executors and Administrators.—Appointment of administratrix by county judge pro tem., under Ky. Stats., section 1059, held valid, in administratrix's action for wrongful death, as against defendant's claim that at time of appointment judge pro tem. was not properly authorized under statute to proceed.

2. Executors and Administrators.—In action by administratrix for wrongful death, claim of defendant that administratrix's appointment by county judge pro tem. under Ky. Stats., section 1059, was made when judge had no authority to proceed, held collateral attack on validity of order.

3. Motions.—Principle that court's orders cannot be collaterally attacked is well settled.

4. Officers.—Acts of de facto officers having color of title to office are valid as to third parties, and cannot be collaterally attacked.

5. Judgment.—Where judgment is relied on as evidence of right and its competency is denied because of alleged invalidity, attack thereon is collateral.

6. Railroads.—In action for wrongful death, resulting from collision of train with automobile, at railroad crossing within city limits, train, which was within city as it approached crossing, was required to give only common-law signals; no statutory signals being required.

7. Railroads.—Recovery could be had for death of automobile driver at city crossing, if railroad's employees failed to exercise ordinary care to have engine under reasonable control so as to prevent injury or to give reasonable notice of train's approach by ringing bell or blowing whistle.

8. Appeal and Error.—Appellant will not be permitted to complain that giving of instruction which it requested was error.

9. Railroads.—In action for death of automobile driver at crossing, railroad, even though negligent, was not liable, if deceased knew or by exercising care could have known that train was approach-

ing, and failed to take precautions for his own safety, and such failure was cause of death.

10. Railroads.—In action for death of automobile driver at crossing, evidence held insufficient to justify submission of case of doctrine of "last clear chance."

WOODWARD, WARFIELD & HOBSON, ASHBY M. WARREN, LOW & BRYANT and ADKINS & BAKER for appellant.

B. B. GOLDEN, JAMES S. GOLDEN and O'REAR, FOWLER & WALLACE for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

The appellant, whom we shall refer to as the defendant, seeks by this appeal to reverse a judgment for $10,000, recovered against it by the appellee, whom we shall refer to as the plaintiff. On June 18, 1924, an automobile driven by Fred Bays was struck by one of defendant's trains at a grade crossing in the city of Evarts, and Bays was killed. The plaintiff's petition thus begins:

"The plaintiff, Susan Bays, suing as the administratrix of Fred Bays, deceased, says that the said Fred Bays died intestate and domiciled in Harlan county, Ky., on the 18th day of June, 1924, as a result of the injuries inflicted upon him by the defendant, its agents and servants, as hereinafter more fully stated.

"That thereafter and on the 7th day of August, 1924, by order duly made and entered of record in the Harlan county court, she was appointed administratrix of the estate of the said Fred Bays, who was her husband at the time of his death aforesaid, she accepted said appointment, executed bond, and qualified as required by law as such adminitratrix, and is now and has ever since been only duly qualified and acting administratrix of said estate."

Thus beginneth the answer:

"The defendant, for its answer to the petition herein, denies that the plaintiff, Susan Bays, was at any time appointed administratrix of the estate of Fred Bays, deceased, or that she accepted any such appointment or executed bond or qualified as any such administratrix, and denies that she is now or ever has been any qualified or acting administratrix of said estate."

So we have at the very threshold of this case a positive denial of the plaintiff's right to sue. The evidence in this case shows that on August 7, 1924, the plaintiff was appointed administratrix of the estate of Fred Bays, by an order of the Harlan county court signed by H. C. Rice, judge pro tem. The defendant has questioned the right of Rice to preside as judge pro tem., and his right to make this order. That becomes the first subject of our inquiry. M. W. Howard is judge of the Harlan county court, and G. W. Howard is the clerk of that court. The August term of the Harlan county court for 1924 began on Monday, August 4. There is nothing in the orders made to show who presided at the opening of the court on August 4, or during the day or who presided on the next day; but on Wednesday, August 6, H. C. Rice appeared and some one presented the following paper:

"August 6th. It is ordered that H. C. Rice be and he is hereby appointed county judge pro tem. to act as such in the absence or sickness of the regular county judge, and said Rice, being present, accepted said appointment and was sworn as such.
"M. W. Howard."

This paper, signature and all, was copied with a typewriter by M. G. Smith, deputy clerk, onto the order book of the Harlan county court, at the head of and as a part of the day's business. The orders of that day, including this one (his own appointment), were signed by H. C. Rice, judge pro tem. On the next day, Thursday, August 7, Rice, as judge pro tem., appointed plaintiff administratrix, as aforesaid. This and other orders of that court that day were signed by Rice as judge pro tem. It is shown that the orders for the August term, 1924, of the Harlan county court, at the end of all of them, were signed by W. J. R. Howard, judge pro tem. None of the orders of the Harlan county court for the August term, 1924, was signed by M. W. Howard, the regular judge thereof. By section 1059 of the Kentucky Statutes it is provided:

"Whenever the county judge shall be absent or unable from any cause to attend or hold the county court or preside at any trial or prosecution, he shall appoint and designate by order entered on the order book of the county court, a county judge pro tem."

That means just what it says. First, it must appear that the county judge is going to be absent or that he is

unable from any cause to attend or hold the county court or preside at any trial or prosecution; some one of those things must appear in the order.

In the case of Cox v. Allen, reported in 188 Ky. 598, 222 S. W. 932, one W. W. Williams undertook to act as judge pro tem. of the Floyd county court. It appears that, at the time he undertook to do so, Judge Hill was well and was at his residence a short distance from the courthouse, and we held a traverse bond executed by Cox before Williams, under such circumstances, was. wholly void. The defendant has cited that case, and is earnestly contending that it is directly in point, and is of controlling applicability to this case. Of course, if the acts of Rice are of no validity, then there has been no personal representative of the estate of Fred Bays appointed, and therefore no one to maintain the suit, and the defendant should prevail (see Morgan's Adm'r v. L. & N. R. Co., 181 Ky. 76, 203 S. W. 1065), but is the situation here identical with the situation in the case of Cox v. Allen? The effect of the execution of the traverse bond in the Cox case was to transfer the case to the Floyd circuit court for a trial de novo. In that court Allen moved to dismiss it because no bond had been executed. That was not a collateral but a direct attack on the bond itself. A circuit court may allow a defective traverse bond to be perfected (see Alderson v. Trent, 79 Ky. 259, 2 Ky. Law Rep. 248), but, if no valid traverse bond has been executed, it should dismiss the proceedings. See Slaughter v. Crouch, 64 S. W. 968, 23 Ky. Law Rep. 1214. The entire matter in the Cox case was before the circuit court for a de novo hearing. The attack upon the bond was a direct attack.

That is very different from this case. The circuit court in this case did not have before it by appeal the order of the county court appointing this administratrix. This was a collateral attack upon the validity of this order, and the principle that a court's orders cannot be so attacked is too well settled to require the citation of authority. Of course, if Rice had simply walked in from the street, and made this order, if he had been an ordinary usurper, that appointment would be wholly void, and of no more legal efficacy than a sheet of blank paper of the same shape and size. However, Rice did have color of title to this office; he was at least a de facto judge pro tem. of the Harlan county court, and the acts of de

facto officers are valid as to third parties. They cannot be attacked collaterally. We have adopted this rule for the determination of whether an attack is direct or collateral:

> "Whatever may be the nicety of distinctions between a direct and a collateral attack, it is everywhere conceded that when the attacked judgment is relied on as evidence of a right, and its competency is denied because of its invalidity, the attack is a collateral one." Decker v. Tyree, 204 Ky. 302, 264 S. W. 726.

The plaintiff's appointment was valid, and she had authority to institute this action.

Fred Bays was killed under these circumstances: He was going to the town of Evarts for a doctor. The road along which he was driving is constructed in the valley of Clover fork of the Cumberland river, referred to by some of the witnesses as Clover creek. Also, in that valley is the railroad of the defendant. This valley is narrow, and the railroad and the highway are, in a general sense, parallel. The highway crosses the defendant's railroad about 1,300 feet north of the station in Evarts. Just before he was killed Bays, who was driving a Ford automobile, coming south on this highway, which was at that point on the east side of the defendant's railroad, had stopped to inquire of one Jones where Dr. Crouch was. This was inside the corporate limits of the city of Evarts, and about 300 feet from that point the highway crossed from the east to the west side of the defendant's railroad. Jones told Bays that Dr. Crouch was just across on the other side of the railroad in a party of men who were working the road. As soon as he obtained his information, Bays started, and called out to a man who was driving a wagon in front of him, "Get out of the way; I am going for a doctor." All the witnesses agree that Bays was going fast, but the exact speed at which he was traveling was not definitely established. Some place his speed at as low as 10 miles an hour, while others place it as high as 20.; but all agree that he was going just as fast as he could go under the circumstances. All agree that without halt or hesitation he started across this railroad track from the east side to the west, and was struck by a north-bound train belonging to the defendant. His automobile was destroyed, and he was killed.

The plaintiff offered considerable evidence that the statutory signals were not given. Such signals were not required. See L. & N. R. Co. v. Louisville Provision Co., 212 Ky. 709, 279 S. W. 1100; L. & N. R. Co. v. Golloway, 219 Ky. 595, 294 S. W. 135. The defendant was only required to give common-law signals of the approach of its train, as this crossing was within the city of Evarts and this train as it approached the crossing was also within the said city.

This brings us now to the instructions. Instruction No. 1 was not entirely correct, but still was not sufficiently erroneous to warrant a reversal, but upon the next trial of the case the court will, in lieu thereof, give this instruction:

> "(1) The court instructs the jury that it was the duty of defendant's employees in charge of the train which struck the deceased, Fred Bays, at the time and place shown in the evidence, to exercise ordinary care to have the engine under reasonable control and to approach the crossing at such reasonable rate of speed, as in the exercise of ordinary care by both parties was reasonably necessary to prevent injury to persons using the crossing and to give reasonable and timely notice of the approach of the train to the crossing by ringing the bell or blowing the whistle, and, if you shall believe from the evidence that the defendant's employees in charge of said train failed to perform any of these duties and that by reason thereof the said Bays was struck by said engine and killed, then the law is for the plaintiff and you should so find."

The next instruction given by the court, which is No. 1a, was a "dangerous crossing instruction." The place where this accident occurred was not, under the evidence, shown to be a crossing of sufficient danger to warrant such an instruction. We therefore conclude that No. 1a should not have been given.

Instruction 2, upon the measure of damage, is approved.

The next instruction was instruction C, which was given upon motion of the defendant, and of course it cannot complain of it, but this instruction is longer than

necessary, and upon the next trial, the court will instruct the jury upon that point as follows:

"If the jury believe from the evidence that the defendant was negligent as defined in instruction No. 1, yet if the jury shall further believe from the evidence that the said Bays knew, or by the exercise of ordinary care could have known, that the train was approaching said crossing, and failed to take such care for his own safety as an ordinarily prudent man, acquainted with this crossing and its dangers, would have taken, under facts similar to those proven in this case, and that, on account of his negligence and carelessness in either of these respects, if any, the injury to him that resulted in his death occurred, and would not have occurred except for such negligence and carelessness, if any, they should find for the defendant."

The plaintiff in her reply had pleaded this:

"Plaintiff says that, if her decedent was neglient, the defendant, its said officers, agents and employees in charge of said train, knew of his negligence and the danger in which he was then and there, or by the exercise of ordinary care in their part might have known same in time to have avoided running upon and injuring and killing him and demolishing, damaging, and ruining said automobile."

Doubtlessly, the plaintiff realized the weakness of her case, and this was an effort on her part to seize "the last clear chance;" but there was no evidence from any witness to justify the submission of such a question to the jury.

The judgment is reversed, and the defendant is awarded a new trial, to be had in conformity herewith.