## Fidelity & Casualty Company of New York v. Miller's Guardian et al.

(Decided June 20, 1930.)

WILKINS & SPARKS, BEN F. WASHER and FRED FORCHT for appellant.

T. O. JONES for appellees.

Opinion of the Court by Judge Clay—Affirming.

On March 28, 1919, A. J. Browning was appointed guardian of Retha Whitmer, an infant under 14 years of age, and qualified by executing bond with the Fidelity & Casualty Company of New York as surety. Some time later Retha Whitmer, who was then more than 14 years of age, married John F. Miller, and on her request her husband was appointed guardian. On June 5, 1923, Browning settled his accounts as guardian and gave to Miller, the new guardian, two checks aggregating $1,-528.54. The smaller check was paid, but the other check for $1,050 was not paid. A little more than two years thereafter Retha Whitmer Miller, the ward, suing by and through her statutory guardian, J. F. Miller, and the commonwealth of Kentucky, brought this suit against A. J. Browning, her former guardian, and his surety, the Fidelity & Casualty Company of New York, to recover the sum of $1,050, represented by the unpaid check, together with 6 per cent. interest from June 5, 1923.

In the second paragraph of its answer and the amendment thereto, the surety pleaded the following defense: Browning settled his accounts and the settlement was approved. The new guardian held the check for $1,050 from June 5, 1923, up to August 6, 1925, without notice or knowledge on the part of the answering defendant that the check was unpaid. Browning was perfectly solvent and amply financially able to pay said check at any time from the date thereof, and was good for said amount on execution from said date until after the new guardian made and filed with the county court his settlement on June 5, 1924. Plaintiffs made no effort in court or otherwise, to collect said sum while Browning was solvent, and against whom an execution could have been collected. By reason of the foregoing facts, the defendant was released and discharged from all liability. A demurrer was sustained to the second paragraph of the answer as amended, and, the surety having declined to plead further, judgment was rendered against it for

the amount prayed for. On appeal it was held that, if the allegations of the second paragraph of the answer were true, it presented a good defense, and that the demurrer thereto should have been overruled,. and the judgment was reversed and cause remanded for proceedings consistent with the opinion. Fidelity & Casualty Co. of New York v. Miller, 220 Ky. 123, 294 S. W. 1093. On the return of the case, the allegations of the answer were denied by reply. The cause was then submitted to the jury, which returned a verdict in favor of plaintiff. The surety appeals.

The facts are these: On June 5, 1923, Miller, the new guardian, executed the following receipt: "Received of A. J. Browning, guardian for Retha Whitmer, $2,-528.54, balance due as shown by settlement filed in the Muhlenberg county court settling his accounts as such guardian. This item is made up as follows: Check for $1,528.54, $500 paid by check at a former date, and $500 paid to C. P. Hudson, payment on trade of land. John F. Miller, for Retha Whitmer Miller." About the same time Browning filed his settlement showing that he had in his hands on March 28, 1921, $1,568.55, on which he charged himself with interest of $117.64, and that since the former settlement he had received $1,510, and that of the total of $3,196.19 he had paid out certain amounts for the benefit of his ward and the balance of $2,528.54 to the new guardian. He further stated in his settlement that he had turned over to John F. Miller the amounts indicated in the settlement. On June 9, 1924, Miller made a settlement in which he acknowledged receipt of cash from Browning in the sum of $2,528.54. He further stated in the settlement that he was chargeable with the sum of $3,229.30, and was entitled to credits amounting to $631.05, leaving a balance in his hands due his ward of $2,598.76.

According to Miller, after he had receipted to Browning and received the $1,050 check, Browning told him that he did not have the money to pay the check and asked him to hold it for 30 days. After the 30 days he went to see Browning, and Browning again said he did not have the money. He informed Judge Sparks of this fact. Browning would always say that he would borrow the money or sell some land. He also stated that the bonding company stood behind him. Judge Sparks made the settlement for him. He asked Judge Sparks to bring the suit against the surety company, and he replied

that he was representing the surety company and to get some one else. Harry B. Fitch, superintendent of the bonding department of the Louisville branch office of the Fidelity & Casualty Company of New York, testified it was his duty to keep a supervision over the status of the various bonds in force, and he received notice of trouble. Neither he nor the company received any notice from J. F. Miller or any one that Browning had failed to pay the check of $1,050. The company did have knowledge of the final settlement made by Browning. This information it received from T. J. Sparks, who sent a copy of the settlement inclosed with the following letter:

"In reply to your favor of recent date we will say that we had the clerk make us copy of the order entered at the regular July term of the county court and are enclosing same herewith. This closes the duties of Mr. Browning as guardian for Retha Whitmer, as you will see from this order it is the confirmation of a final settlement. The clerk did not show in this order that the bond was released but even if the order did show that it would not release the bond for any failure on the part of the guardian to account for all moneys coming into his hands. But no exceptions were filed to the settlement and it was therefore confirmed, and the bond is released because Mr. Browning accounted for all moneys received by him as such guardian."

At that time Mr. Sparks was the county seat attorney, and had authority to execute bonds. At the time of the settlement with Browning, the company had no regular representative except that Mr. Sparks looked after such matters as that for the company; Mr. Sparks was representing the company in 1924, and continued to represent the company until suit was brought.

After hearing evidence on the question of Browning's solvency, the court instructed the jury as follows:

"The court instructs the jury to find for the plaintiffs, unless you believe from the evidence that at the time A. J. Browning, guardian for Retha Whitmer, made his final settlement as such guardian in Muhlenberg county court and executed and delivered his check for $1,050.00 to John F. Miller, guardian, and for a reasonable time thereafter the said

A. J. Browning was solvent and financially able to discharge his obligations in the due course of business, and further believe that the plaintiff, John F. Miller, guardian for Retha Whitmer Miller, failed to exercise due diligence in collecting said check and reducing the same to cash, and such failure if any, on the part of the plaintiff prevented the defendant, Fidelity & Casualty Company of New York, from protecting itself in its suretyship on the guardian bond of A. J. Browning, guardian for Retha Whitmer Miller, in securing indemnity from A. J. Browning from loss by reason of said suretyship, and that the defendant could and would have secured said indemnity but for the lack of diligence, if any, on the part of the plaintiff, John F. Miller, guardian, in collecting said check, then you will find for the defendant.''

It is first insisted that appellant was entitled to a peremptory instruction. The basis of this contention is that in its former opinion the court ruled in effect that appellant, as surety of Browning, was released by the laches, of Miller, the new guardian, and that Browning's solvency at the time he gave the check, or for some time thereafter, was wholly immaterial. It is true that in the opinion there is language which, considered by itself, is calculated to give this impression, but, when the opinion is considered as a whole, there can be no doubt that it was the purpose of the court to hold, and that it did hold, that, if the allegations of the second paragraph of the answer were true, it presented a good defense, and that among the allegations that the court regarded as material and necessary to the defense was the allegation that Browning was solvent and financially able to pay the check at any time from the date thereof, and was good for said amount on execution from said date until after the new guardian made his settlement on June 5, 1924, and that plaintiffs made no effort in court or otherwise to collect said sum while Browning was solvent. In the circumstances we conclude that the court did not err in overruling the motion for a peremptory instruction, and properly submitted the question of Browning's solvency to the jury.

But the point is made that the given instruction did not require the jury to believe that appellant had notice

or knowledge of the check and its nonpayment, and that the court erred in not giving the offered instruction embodying that theory. In our opinion this was not necessary. If appellant had the right to rely on the settlement made by Browning, it was charged with notice of all that the settlement showed, and one of the things shown by the settlement was that Browning had given the check to the new guardian. Not only so, but, inasmuch as it is made the duty of the guardian to deliver and pay to those entitled thereto all the estate and money in his hands as guardian (section 2037, Kentucky Statutes), and the guardian and his surety are liable on their covenant for all property or money which comes to the hands of the guardian as such (section 2040, Kentucky Statutes), the surety, knowing that in the settlement the guardian has given a check, takes its chances on the payment, and is liable if the check be not paid, unless the guardian was solvent at the time and for reasonable time thereafter, and the new guardian to whom the check was payable failed during such solvency to take steps to enforce the collection of the check. In other words, unless the surety is prejudiced by the new guardian's delay in enforcing the collection of the check, there is no reason why it should not discharge its covenant and pay the check.

Another contention is that the instruction is defective in that it fails to define what is meant by "reasonable time" and by "due diligence." Clearly, the instruction is correct as far as it goes, and appellant, who did not request the court to define the words referred to, is not in a position to complain. Pitman v. Drown, 176 Ky. 263, 195 S. W. 815.

There is no basis for the insistence that Browning's solvency was established as a matter of law. On the contrary, the weight of the evidence is to the effect that Browning was not solvent when the check was given, or at any time thereafter. In the circumstances, the question was for the jury, and it cannot be said that its finding was flagrantly against the evidence.

Judgment affirmed.