## Cornett v. Kelly.

(Decided Dec. 17, 1937.)

CHARLES B. SPICER for appellant.

J. B. WALL for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

Appellee was one of five infant children of A. Z. Kelly, who died in 1918 leaving a small estate. He was seven years of age at the time of his father's death. The mother had acted as guardian for some time prior to the time a guardian was appointed by the county court, and took charge of the property belonging to the infants.

Estus Kelly, appellee, left Harlan county some time before he reached mature age, moving either to Ohio or Indiana. On the day he became twenty-one years of age he appared in Harlan and requested a settlement. It is uncontradicted that the guardian's account with appellee showed that at that time he should have had, after paying taxes, court costs, commission, and charging against the ward $240 for necessaries furnished, the sum of $3,674. The settlement (later approved) was consummated on March 4, 1932, by giving the ward a check for $177.24, and executing to him a note for the balance of $3,500, its payment secured by a mortgage on a brick house in Harlan.

There is no contention as to the correctness of the amount due appellee, nor is there complaint of any charges made against his funds. On March 1, 1935, appellee filed his petition in equity in the Harlan court, seeking to recover of the guardian and his surety the sum of $3,500, subject to certain credits paid by way of interest. As his cause he complained, after alleging the facts as above stated, that the settlement was made on the day appellee became of age, and at a time when he was inexperienced in business affairs, and that same was in fraud of his rights; he accepted the mortgage, not as a settlement, but as further security or as evidence of the amount then due him. As soon as the settlement, in the manner detailed above was made, the ward went back to Indiana. On the day of the execution and delivery of the note and mortgage, the guardian paid $105, which represented six month's interest in advance. Interest was also paid on the note semiannually until some time in July, 1933, no payments appearing to have been made after that date. In January, 1933, the ward wrote to the guardian asking for a payment on the note, which was not forthcoming. Several times thereafter the ward unsuccessfully sought payment of interest which was overdue. The ward later came to Harlan, as he says, "sometime in August, 1934, to get what was owing him," and then for the first time learned that his mortgage was inferior to a prior mortgage executed by the guardian to a bank in Harlan.

The ward says that at the time of the settlement his guardian told him that he had loaned the money to some person who had done business with the Citizens National Bank, "that went under about that time and he could not collect until the bank paid off; until he could recover the money." The mortgage (or copy) is exhibited, and is silent on the subject of a prior mortgage. Pleadings were completed and proof taken, and upon submission of the cause the chancellor adjudged that appellee should recover of the guardian and appellant, jointly and severally, the sum of $3,500, with interest, subject to certain interest credits. From this judgment the surety alone has prosecuted appeal.

It is insisted by counsel for appellant that the judgment should be reversed for two reasons: First, there is no liability on the part of the surety (appellant) because there was no valid appointment of the guardian, a purported appointing order never having been signed

by the presiding judge of the county court, or his successor. It is also argued that the pro tem. judge who signed the orders was not duly appointed because the order appointing him was not signed by the regular judge. Second, it is argued that, conceding the appointment was valid to the extent of constituting the judge pro tem. a de facto officer, yet appellee is estopped by his laches, since he accepted the settlement, waited three years to complain, and in the meantime one of the sureties had died, his estate settled, and the principal had become insolvent.

The facts as developed by the record, upon which the first contention is based, are: M. W. Howard on June 4, 1923, was the regular judge of the Harlan county court. The order convening court on that day showed that he was presiding. On June 5, 1923, there was entered an order appointing George R. Pope public administrator and guardian, with his brother, J. M. Pope, and appellant, Cornett, as sureties on his $5,000 official bond, executed and noted approved by an order of the same day. The appointment of the above-named officer is provided for by sections 3903-3908, Kentucky Statutes.

The proof further showed that on June 14, 1923, an order was entered, reciting the illness of Judge Howard, and appointing J. S. Forrester judge pro tem., for an indefinite period. Under this order the appointee "appeared and took the oath according to law." On August 9, 1923, the pro tem. judge still presiding, an order was entered reciting the fact that some four or more of the infant children of A. Z. Kelly (appellee being one of the number) were without guardian. It was then ordered and directed that George R. Pope, public guardian, "take charge of such property belonging to said infants," and administer same according to law, under "his official bond," as public guardian. He later took charge of the properties belonging to the five infants, and from the record it appears he made settlement with each upon reaching maturity.

The order of June 5, appointing the public administrator and guardian, the one of June 14, appointing the judge pro tem., and the one of August 9, turning over the property of the infants to the public guardian, were not signed by the regular judge, but were signed by the judge pro tem.

Appellant insists that at most Judge Forrester was only a de facto officer, and his acts in signing the orders were of no effect, therefore the appellee is not to be held liable as surety. In support of his argument counsel points to section 1060, Ky. Stats., which upon observation we find provides that orders shall be signed by the regular judge or special judge, "who presided when the record was made." By reference to the preceding section (1059) it will be noted that the statute provides for both a pro tem. and a special judge. The latter is to serve only in a particular case when the regular judge is for some reason asked to and does vacate the bench. The judge pro tem., however, is as expressly provided, empowered to perform any and all duties imposed by law upon the regular judge, the latter being made liable upon his official bond for the acts of his pro tem. appointee.

The same state of facts, as here presented, arose in a case where a pro tem. appointment was made in the identical court by Judge Howard, the same judge who made the appointment in the instant case. This will be noted by reference to Louisville & N. R. Co. v. Bay's Adm'x, 220 Ky. 458, 295 S. W. 452, wherein it appears the company was being sued by the administratrix for damages on account of the alleged negligent fatal injury to her husband. Upon the same state of facts as exist here, her right to maintain action was challenged on the ground that her appointment as personal representative had been made by a pro tem. judge, the fact further appearing that the pro tem. judge had signed the order appointing him as such, and therefore void.

In the opinion, supra, the court pointed out the provisions of section 1059 with respect to the power of a judge pro tem., and observed that the statute meant just what it said, i. e., the pro tem. judge was thereby endowed with all power of the regular judge. The court held that the appointment of the pro tem. judge in that case was valid, and that his act in appointing the administratrix was valid. It was also said in that case that Rice, the judge pro tem., was, to say the least, a de facto officer, and that his acts were valid as to third parties and not subject to a collateral attack, citing Decker v. Tyree, 204 Ky. 302, 264 S. W. 726. With this ruling of the court before us we so hold as to the orders here in question.

Consideration of the contention of estoppel will require a recital of the proof, more particularly that for appellant, which consists solely of the testimony of the guardian. We have hereinbefore recited the circumstances and facts, substantially as pleaded and testified to by the ward. The guardian admitted that on March 4, 1932, he was chargeable with the amount set out above; that on that day he made settlement by paying to his ward the cash item above mentioned, executing the note for $3,500, and the contemporaneous mortgage on his brick building. He says that, when appellee approached him for a settlement, "We talked the proposition over; he went down and looked at the property and agreed to take a note for $3500.00 and secure it by a mortgage on the property that I showed him, the three-story brick building." He also says there was never any question on the part of appellee as to the "validity" of the mortgage until after he had failed to meet the interest payments at a due date. The guardian says he executed the mortgage because he was indebted to the ward in the sum of $3,500. On cross-examination he first said that the note (and mortgage) were executed to secure the payment of money borrowed of the ward for a period of six months; that appellee was not married at that time and said he did not particularly need the money. He did not know how much money he had in bank at that time (of settlement) but did have enough to pay $174.24 in cash and $105 interest on the note. Later the guardian admitted that the ward's money, "or a part of it," was put by him in the purchase of the brick building. According to the guardian's proof, he had purchased the brick building for $23,500, just when is not shown. At the time of purchase, the building was subject to a mortgage of $11,000. This was reduced to $7,500 (when, not shown) and later reduced to $5,400. It is strongly inferable from the guardian's testimony that the ward's $3,500 was applied in reducing the mortgage debt to $7,500. The guardian admitted, and it is otherwise shown, that the prior mortgage existed when the settlement was made, and, by failing to show otherwise, it is practically admitted by the guardian that he did not tell the ward of the pre-existing lien; nor did he tell him that he had used the trust fund in reducing the mortgage. He merely says, "we talked the proposition over." The guardian admitted that he had collected rent from the

building to an amount of more than $100 per month, which he had used in paying interest, taxes, and for his personal use.

The guardian did not put any estimate on the value of the brick building, nor did either he or appellant undertake to prove its value at the time of the execution of the mortgage to the ward. On the other hand, it is proven, and not disputed, that the value of the brick building at the date of the mortgage was not in excess of $6,000. It developed that on March 2, 1935, the brick building in question was sold by order of court in a suit by the Harlan Bank against George R. Pope and wife, and Estus Kelly and wife, and brought the sum of $6,500, which was very little more, after payment of court costs, than enough to satisfy the mortgage held by the bank. It is not shown by the record when this suit was filed, but it would not be far afield to infer that at that time the knowledge of the existing mortgage was first brought to the attention of the ward. We also note that the master commissioner in testifying says that the property was bid in by the guardian for his son.

There seems to be no argument as to whether or not the guardian's transactions with his ward were exercised in that sort of good faith which is requisite in dealings where such confidential and fiducial relations exists. In Meade v. Fullerton's Adm'x, 266 Ky. 34, 98 S. W. (2d) 1, 2, we wrote:

"But, in this connection, as the relation between a guardian and ward is considered one of the most important and delicate of trusts, contracts made by guardians with their wards, such as the acquisition of their property immediately after they become of age, are looked upon by the law with suspicion, and upon the appearance of unfairness or abuse of confidence they will be set aside. Richardson v. Linney, 46 Ky. (7 B. Mon.) 571, 573. It has accordingly been held, in determining a case involving that situation, that the burden lies upon the guardian or those claiming under him to establish by clear evidence that the transaction was entered into freely, voluntarily, and understandingly by the former ward. Fidelity Trust Company v. Butler, 91 S. W. 676, 28 Ky. Law Rep. 1268; Gregg v. Hedges' Guardian, 227 Ky. 268, 12 S. W. (2d) 854; Strain v. Strain, 237 Ky. 270, 35 S. W. (2d) 306."

By reference to 10 Kentucky Digest, 69, under title Guardian and Ward, will be noted a number of cases in which this court has been called upon to review conveyances, contracts, and other transactions between a guardian and his ward, quite a number of the cited cases condemning questionable transactions, some after the ward became of age, where such were found to have been in detriment to the rights of the ward. Upon a survey of such cases, and applying the principles to the instant case, we are clearly of the opinion that the guardian did not act in good faith with his ward, and overreached him to an extent that would not justify us in holding that the alleged settlement was binding on the ward. To sanction such a settlement would be to establish a precedent that would lead to undue and improper influence by a guardian and other fiduciaries for purposes of gain over those whose rights they should protect and maintain. The guardian has not prosecuted appeal, which to some extent may be taken as a tacit admission that the court adjudged correctly, in so far as his defense was concerned.

The remaining question is as to whether or not the surety, appellant here, is liable on the guardian's bond. As pointed out above, the appellant did not undertake in any way to prove any of the allegations of his answer. It may be observed that his defense was based on the allegation that by the laches of the appellee he was lulled into security, and therefore had no opportunity to indemnify himself against possible loss, by some procedure against his principal and cosurety. He says both were solvent at the time of the settlement, but that the principal has since become insolvent, and the other surety has died, and his estate settled. He introduced no proof on this point. It will not do to say that the principal showed by his proof that he was solvent at the time of settlement, for it does not so show. It is true that he and his ward had an uncertain equity in the brick building, but he does not show what debts he then owed, if any. From the whole proof it appears here, and must have so appeared to the chancellor, that he was insolvent at that time.

We think the question of laches, as a defense of appellee, is without merit. The transaction between the guardian and ward has been fully recited. The insistence is, that the ward by accepting the settlement and failing to take action to surcharge or otherwise avoid

it until about three years thereafter bars him from recovery. This is not a plea of limitation, but is one based on the ward's failure to act promptly as appellant contends he should have acted. Counsel relies upon a number of cases, most, if not all, of which are referred to in the case of Fidelity & Casualty Company of New York v. Miller, 220 Ky. 123, 294 S. W. 1093, and which present some authorities to support in part appellant's contention here. However, on second appeal we reviewed the Miller Case, supra (and in doing so considered the cases therein cited), in a case of the same style, involving the same transactions between the same parties. Id., 235 Ky. 109, 29 S. W. (2d) 595, 597.

The first Miller Case, supra, was reversed because the court had overruled a demurrer to the second paragraph of appellant's answer, which pleaded laches on the part of the ward, and also pleaded solvency of the guardian at the time of the transaction, followed by later insolvency. The facts as developed in each case were that the guardian, in settlement with his ward, had given a "cold" check for $1,050, which was held for more than two years, and, when presented for payment, same was void. The guardian in the meantime had become insolvent.

When the first case went back to the lower court, there was an issue on the question of the guardian's solvency at the time of the settlement and a "reasonable time thereafter," which issue was, as we said in the last Miller Case, properly submitted to the jury, which found in favor of the ward. On the second appeal here it was insisted that, on the showing that more than two years had lapsed between the date of settlement and action to void same, the surety was entitled to peremptory, since the guardian's "solvency at the time he gave the check, or for some time thereafter, was immaterial."

Speaking to that insistence, we said in the later Miller Case:

"It is true that in the opinion there is language which, considered by itself, is calculated to give this impression, but, when the opinion is considered as a whole, there can be no doubt that it was the purpose of the court to hold, and that it did hold, that, if the allegations of the second paragraph of the answer were true, it presented a good

defense, and that among the allegations that the court regarded as material and necessary to the defense was the allegation that Browning was solvent and financially able to pay the check at any time from the date thereof, and was good for said amount on execution from said date until after the new guardian made his settlement on June 5, 1924, and that plaintiffs made no effort in court or otherwise to collect said sum while Browning was solvent. In the circumstances we conclude that the court did not err in overruling the motion for a peremptory instruction, and properly submitted the question of Browning's solvency to the jury.

"But the point is made that the given instruction did not require the jury to believe that appellant had notice or knowledge of the check and its nonpayment, and that the court erred in not giving the offered instruction embodying that theory. In our opinion this was not necessary. If appellant had the right to rely on the settlement made by Browning, it was charged with notice of all that the settlement showed, and one of the things shown by the settlement was that Browning had given the check to the new guardian. Not only so, but, inasmuch as it is made the duty of the guardian to deliver and pay to those entitled thereto all the estate and money in his hands as guardian (section 2037, Kentucky Statutes), and the guardian and his surety are liable on their covenant for all property or money which comes to the hands of the guardian as such (section 2040, Kentucky Statutes), the surety, knowing that in the settlement the guardian has given a check, takes its chances on the payment, and is liable if the check be not paid, unless the guardian was solvent at the time and for reasonable time thereafter, and the new guardian to whom the check was payable failed during such solvency to take steps to enforce the collection of the check. In other words, unless the surety is prejudiced by the new guardian's delay in enforcing the collection of the check, there is no reason why it should not discharge its covenant and pay the check."

The only difference in the Miller Cases and the case at bar is that in the Miller Case there was sufficiently pleaded and attempted to be proven the solvency of the guardian at the time of, and for a reasonable

time after, the settlement. It is to be noted here that in the joint answer of guardian and surety it is pleaded:

> "That at the time of the settlement * * * the said George R. Pope was solvent and had property enough to satisfy in full the amount mentioned in the plaintiff's petition, and that he is now insolvent, and that if plaintiff had raised the question earlier, said sureties on said bond could have protected themselves."

There is here no pleading of solvency of the guardian for a "reasonable" or any time after the date of settlement. It may be, as far as this pleading shows to the contrary, that the guardian became insolvent on the day of settlement, which the proof strongly indicates.

In the separate answer of appellant, there is contained no mention of insolvency of the guardian at any time. His defense therein was based on the allegation that the ward extended the time of settlement, without notice to surety, and that by his acts, or failure to act, appellant was led to believe "this indebtedness had been paid off." This contention is fully answered in the quotation from the Miller Case.

However, we need not take time nor space to critically examine or discuss the defensive pleadings referred to. Admitting for the sake of argument only that the pleas were sufficient, there was a total lack of proof to uphold the solvency or insolvency plea. This was in issue, since specifically denied in reply by the appellee. In such a case, pleading without proof is as ineffectual as proof without pleading. Grand Lodge, Brotherhood of Railroad Trainmen, v. Bash, 256 Ky. 511, 76 S. W. (2d) 604; Glass v. Board of Common Council of City of Frankfort, 262 Ky. 471, 90 S. W. (2d) 700.

For the reasons stated above, we are of the opinion that the chancellor rendered a proper judgment, and it is therefore affirmed.